**SIGNED THIS: November 29, 2018**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.  18-70442 |
| CHAD M. BLAND and | ) | |
| SHAWNTEE M. BLAND, | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |

# O P I N I O N

Before the Court is an objection to the Debtors' claim of exemptions filed by the Chapter 7 Trustee. After considering the testimony and exhibits presented at an evidentiary hearing, the objection will be denied because the Trustee did not meet his burden to prove that the Debtors are not entitled to their claimed exemptions.

### I. Factual and Procedural Background

Chad M. Bland and Shawntee M. Bland ("Debtors") filed their voluntary petition under Chapter 7 of the Bankruptcy Code on March 31, 2018. On their Schedule A/B, the Debtors listed three vehicles: a 2006 Dodge Grand Caravan valued at $2514, a 1997 Ford Ranger valued at $2060, and a 2006 Buick Rendezvous valued at $1000. The Debtors stated that the Dodge and Ford were both in good condition and that the scheduled valuations came from the Kelly Blue Book. They described the Buick as in "the shop needing a new transmission." The Debtors claimed that the Dodge and Buick were owned solely by Shawntee Bland and that the Ford was jointly owned. Exemptions were claimed in the Dodge and the Ford using the Debtors' vehicle exemptions and in the Buick using part of their wild card exemption.

The Debtors also scheduled ownership of a bank account at Town & Country Bank with a balance of $343. They disclosed ownership of household goods and furnishings valued at $2500. They claimed the bank account and their household goods and furnishings exempt using their wild card exemptions. On their Statement of Financial Affairs, the Debtors disclosed that they had previously held an account at Citizen's First Equity Credit Union, which they closed in August 2017.

The Chapter 7 Trustee ("Trustee"), Jeffrey D. Richardson, filed an objection to the Debtors' claim of exemptions pointing out that, just months before filing, Chad Bland had received a $47,000 inheritance from his grandmother's estate and used some of the inherited funds to buy two of the vehicles and some household goods. The Trustee asserted that the Debtors had failed to disclose the

bank account that held the inheritance, which had a balance of less than a dollar on the date the case was filed. He argued that, under Illinois law, the Debtors' exemptions in their vehicles and household goods should be disallowed because they were acquired through the expenditure of nonexempt assets within six months of the bankruptcy filing. The Debtors responded with an assertion that they had no intent to defraud creditors when they purchased the vehicles and household goods.

At an evidentiary hearing held September 25, 2018, the Trustee called Charlotte Bland, the sister of Chad Bland, as a witness. She identified bank records from an account at Town & Country Bank in Lincoln, Illinois, which she held jointly with Chad Bland. She stated that the account was opened in January 2018 with a deposit of approximately $47,000 representing Chad Bland's share of his grandmother's estate. Charlotte Bland said that her name had been placed on the account so that she could have access to the funds to pay bills. Specifically, she said that she, Chad, and another brother, Robert Bland, had inherited a house from their mother and that the house was currently occupied by Chad Bland's family. She had written checks from the joint account to pay for insurance and back taxes on the house and issued a check from the account to Robert Bland for $10,000 for Chad Bland's purchase of Robert's interest in the house. She acknowledged, however, that Robert Bland had never signed a deed or other paperwork to complete that transaction.

Charlotte Bland said that she also wrote a check for $100 cash from the account and used the money to pay Chad Bland's share of the fees due to a lawyer that she, her brothers, and several of her cousins had retained to assist them in

matters relating to their grandmother's estate. She acknowledged that a final distribution of approximately $2000 from the grandmother's estate was due to be paid to each beneficiary, including Chad Bland, within a few days.

Chad Bland was also called as a witness by the Trustee. He identified the bank records from the account at Town & Country Bank held jointly with his sister and admitted that he had not disclosed the account on his schedules. He said that the Town & Country Bank account scheduled referred to a different account that he held jointly with his wife. He admitted that he and his wife had initially met with their bankruptcy attorney in late September or early October 2017.[1] Chad Bland said that he received the $47,000 inheritance after he had decided to file bankruptcy but denied that he had purposely spent the entire amount within three months to avoid having any of the funds go to his creditors. He affirmatively stated that he did not realize that his bankruptcy had not yet been filed when he received and spent the inheritance. He disclosed the inheritance to the Trustee at his creditors meeting.

Mr. Bland identified an accounting that he had prepared for the Trustee regarding how the $47,000 had been spent from late January through March 2018. The accounting showed $15,000 withdrawn from the Town & Country Bank account in cash increments ranging from $100 to $3000. The withdrawals were not dated, and no explanation of how the cash was spent was provided on the accounting. Checks issued by Charlotte Bland to Robert Bland and for the payment of insurance and taxes on the jointly-owned home were also disclosed.

---

[1] The Debtors' Statement of Financial Affairs says that the Debtors made installment payments on their bankruptcy fees beginning in August 2017 and continuing through January 2018.

The accounting shows $5000 spent for home improvements and $5000 spent on expenses for the Debtors' three children, but it provided little detail on the precise expenditures. The purchase of the Ford Ranger is shown for $2000, and the purchase of the Buick is listed for $3600.

With respect to the vehicle purchases, Mr. Bland testified that the amounts shown include not only the purchase price but also the costs associated with acquiring the vehicles, such as license fees and insurance. He did not itemize how much had actually been paid to purchase each vehicle. Under questioning by his own attorney, Mr. Bland said that their Dodge vehicle had high mileage and that he purchased the Buick Rendezvous to provide his wife and children with more reliable transportation. He said that he had just started a new job and purchased the Ford Ranger to have reliable transportation to his new place of employment. He had previously walked to work, but his new job was out of town, so he needed a vehicle for the commute.

Shawntee Bland was also called as a witness by the Trustee. In her limited testimony, she confirmed that she agreed with the testimony of both her sister-in-law and her husband.

At the close of evidence, the Trustee stated that he was waiving his objection to the Debtors' claim of exemption in their household goods and was asking only that their exemptions claimed in the Ford Ranger and Buick Rendezvous be denied. He asserted that they had purchased the vehicles with nonexempt inheritance proceeds and that such purchases were presumed, under Illinois law, to have been made in contemplation of bankruptcy. The Debtors' attorney asserted that Chad Bland's testimony established that the vehicles were

purchased to meet family transportation needs and without any thought of the bankruptcy filing. He argued that the statutory presumption had been rebutted.

Both parties relied solely on the statutory language for their positions and neither cited any case law. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the exemption of property from a bankruptcy estate are core proceedings. 28 U.S.C. §157(b)(2)(B). This matter arises from the Debtors' bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

The Debtors are Illinois residents and were required to use Illinois exemptions rather than the federal exemptions in their bankruptcy filing. 735 ILCS 5/12-1201; 11 U.S.C. §522(b). The Illinois personal property exemptions available to the Debtors are limited, in part, by the following provision:

> If a debtor owns property exempt under this Section and he or she purchased that property with the intent of converting nonexempt property into exempt property or in fraud of his or her creditors, that property shall not be exempt from judgment, attachment, or distress for rent. Property acquired within 6 months of the filing of the petition for bankruptcy shall be presumed to have been

acquired in contemplation of bankruptcy.

735 ILCS 5/12-1001.

Although the parties assumed the above provision applied to the facts here, they spent little time in their arguments discussing the impact of the provision on the outcome. Their lack of argument and analysis regarding the statutory provision was disappointing because the provision is actually somewhat unclear. It says that an exemption in a debtor's personal property may be denied, first, if the property was purchased with the intent of converting nonexempt property into exempt property and, second, if the property was purchased in fraud of creditors. The provision goes on to create a presumption that property acquired within six months of a bankruptcy filing was acquired in contemplation of bankruptcy. But acquiring property is not the same as purchasing it; a purchase is only one of the many ways property may be acquired. *In re Hoerr*, 2004 WL 2926156, at *4 (Bankr. C.D. Ill. Dec. 13, 2004) (Perkins, J.). And acting in contemplation of bankruptcy is not synonymous with converting nonexempt property into exempt property or committing a fraud on creditors. Unfortunately, there is little Illinois case law available to explain the provision, and what is available is not particularly helpful.[2]

---

[2] There are, perhaps, several reasons for the lack of Illinois case law construing the provision. First, the provision only applies when a bankruptcy case has, in fact, been filed, making it likely that litigation regarding the provision would occur, as it does here, in a bankruptcy court rather than a state court. Second, Illinois has very modest exemptions—$4000 in a wild card exemption covering household goods, furnishings, bank accounts, tax refunds and other personal property, and $2400 in a vehicle. 735 ILCS 5/12-1001(b), (c). These limited amounts can realistically shelter only the basic amounts of assets. It is therefore unlikely that significant amounts of nonexempt assets could be parked either in the wild card or vehicle exemption category bringing the provision into play.

In one of the few reported cases on the issue, the Illinois Supreme Court held that, when debtors acquired an automobile less than five months before filing bankruptcy, "they presumptively did so with the intent to transform nonexempt property into exempt property." *Medaris v. Commercial Bank of Champaign*, 118 Ill. 2d 443, 445-46, 515 N.E.2d 1218, 1219 (1987). Thus, the Illinois Supreme Court equated the presumption of acting in contemplation of bankruptcy with an intent to convert a nonexempt asset to an exempt asset. But the court provided absolutely no analysis of why those two very different phrases should be construed as having identical meanings. And, even more troubling, the facts of the case established that the automobile purchase was 100% financed by a bank loan rather than through the expenditure of nonexempt funds. *Id.* at 1218. The issue of how loan proceeds disbursed directly and solely for the purpose of purchasing an automobile could be found to have been pre-purchase, nonexempt property of the debtors was not addressed.

But *Medaris* is not only unhelpful in construing the statute—it also unnecessarily questions whether the presumption set forth in the statute is rebuttable. *Id.* at 1219. The *Medaris* lower courts had decided only that the lien of a creditor on an automobile was superior to any exemption claim of the debtors with respect to that automobile. The Illinois Supreme Court, in affirming both lower courts, found that the debtors did not have an exemption claim even though that issue had not been raised below and the parties had not had the opportunity to present briefs or arguments on the issue. *Id.* Not having given the debtors a chance to attempt to rebut the presumption or even to argue that they should be given that chance, the court did not actually reach the issue of whether the

presumption is rebuttable. It simply raised the issue and then said the issue remained undecided. *Id.*

But the issue of whether evidentiary presumptions are generally rebuttable appears to be settled law in Illinois and was well-settled before *Medaris* was decided. Illinois has long followed the view "that a presumption ceases to operate in the face of contrary evidence." *Diederich v. Walters*, 65 Ill. 2d 95, 102, 357 N.E.2d 1128, 1131 (1976). And, "the presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of going forward and introducing evidence to meet the presumption." *Id.* Presumptions are not evidence and serve to support a factual finding only in the absence of contrary evidence. *Id.* at 1132.

In their closing arguments, neither the Trustee nor the Debtors' attorney discussed their respective burdens of proof or of going forward and, again, spent little time focusing on the actual language of the provision. But a close review of the statutory language and relevant case law leads to the conclusion that the presumption is rebuttable. Further, while it may be relevant to the issue of intent, the presumption itself only goes to the issue of whether property was acquired at a time the Debtors were contemplating bankruptcy and not the issues of whether nonexempt assets were intended to be and were in fact used to purchase exempt assets. To equate the presumption that property is acquired in contemplation of bankruptcy with an intent to convert nonexempt assets to exempt assets, would be to effectively preclude an exemption in any property acquired within the six months preceding bankruptcy. In addition to being inconsistent with the plain language of the Illinois exemption statute, the "result would run contrary to the

firmly embedded and longstanding bankruptcy policy that permits debtors to convert nonexempt property into exempt property in order to maximize the exemptions to which they are entitled." *Barber v. Dunbar (In re Dunbar)*, 313 B.R. 430, 438 (Bankr. C.D. Ill. 2004) (Perkins, J.). Proof of actual intent and the nonexempt status of the assets used for the purchase must still be presented. *Hoerr*, 2004 WL 2926156, at *3-4.

At the evidentiary hearing, Chad Bland testified that he purchased the Ford Ranger because he had taken a new job and needed transportation to get to work; he had previously worked close enough to home that he walked. He said that he purchased the Buick Rendezvous to provide more reliable transportation for his wife and children; the Debtors' other vehicle had high mileage and was not reliable. Mr. Bland denied buying the vehicles to avoid creditors getting a share of his inheritance. He also said that he thought his bankruptcy was already filed when the vehicles were purchased. His testimony on these issues was credible and was more than sufficient to overcome the statutory presumption that the purchases were made in contemplation of bankruptcy. The Trustee presented no evidence to undercut Mr. Bland's testimony; he relied solely on the presumption, which, as set forth above, is not fully dispositive of the issues and ceased to be operative in the face of credible contrary evidence. The Trustee failed to meet his burden of proof on the issue of the Debtors' intent to maximize their exempt assets in contemplation of bankruptcy.

Chad Bland's uncontradicted testimony is sufficient to defeat the Trustee's objection to the Debtors' claim of exemptions. But it is important to note that the Trustee also failed to meet his burden to prove that nonexempt assets were used

to purchase the vehicles. Although the Illinois personal property exemptions include no specific exemption for an inheritance, Chad Bland had his $4000 wild card available to exempt that much of his inheritance. 735 ILCS 5/12-1001(b). If he had $4000 left in the Town & Country account when he filed, he could have exempted that amount.[3] Thus, it is also true that, to the extent $4000 or less of the value in the vehicles is traceable to the inheritance, those amounts are also properly exempted. Using exempt funds to purchase exempt personal property does not result in the loss of an exemption under the provision relied on by the Trustee.

No evidence of the exact amounts the Debtors paid for the Ford Ranger or the Buick Rendezvous was presented. The gross cost of purchasing, licensing, and insuring the vehicles was listed on the Debtors' accounting as a combined $5600. But the value of the two vehicles on the Debtors' schedules was listed at a combined $3060. Absent more precise documentation about the actual purchases, this Court cannot find that any nonexempt funds were used to purchase the two vehicles.

## IV. Conclusion

In his closing arguments, the Trustee complained about the Debtors' initial failure to disclose the Town & Country Bank account related to the inheritance on their schedules and said that, in making his objection, he was "standing on a

---

[3] This assumes, of course, that Shawntee Bland would then have used her $4000 wild card exemption to exempt the Debtors' household goods and furniture and the small amount in their joint checking account. The value of those items total less than $4000, making that assumption realistic.

point." He argued that the Debtors had dumped $40,000 to avoid having their creditors share in the funds and suggested that the Debtors should have filed the bankruptcy when they received the funds so that the funds could have been distributed to their creditors. Contrary to the Trustee's position, however, there is no "authority to support the conclusion that one who anticipates filing a bankruptcy case owes a legal duty to a hypothetical Trustee-in-waiting, or to existing creditors . . . to arrange his financial affairs so as to maximize the nonexempt value of the anticipated bankruptcy estate." *Hoerr*, 2004 WL 2926156, at \*5. And the failure to initially disclose an asset cannot be used as a basis to deny an exemption in other assets where there is no actual statutory authority to deny the exemption. *Law v. Siegel*, 571 U.S. 415, 424 (2014).

Of course, the Trustee was not without remedy in this case. *Id.* at 427 (explaining that its ruling did nothing to strip courts of the essential "authority to respond to debtor misconduct with meaningful sanctions"). For example, "[t]here is ample authority to deny the dishonest debtor a discharge." *Id.* The Debtors put their discharge at risk by not disclosing the Town & County Bank account, by not keeping records of their expenditures from which their financial condition might be ascertained, and by failing to satisfactorily explain the deficiency in their assets after the receipt of the $47,000. 11 U.S.C. §727(a)(3), (4)(A), (5). Their so-called accounting was wholly inadequate, and their failure to keep and produce records of their spending in the several months before their bankruptcy filing would seem to preclude the issuance of a discharge. But the Trustee twice requested and received extensions of time to object to the Debtors' discharge and ultimately chose not to pursue that course of action. This Court will not second-guess the

Trustee on his decision not to pursue an objection to discharge; most certainly the Trustee acted in the manner he thought was best for the estate and the creditors. At the same time, however, the Court cannot grant the Trustee the relief he requests here in the absence of required proof simply because the Trustee might have been entitled to more significant relief if he had chosen to pursue it. The objection to claim of exemptions must be measured on its own merits, and, in the absence of required proof, the objection must and will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###